**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-CV-24005-XXXX**

DAVID FINKELSTEIN

Plaintiff,

v.

CARNIVAL CORPORATION,
IBEROSERVICE INCOMING SERVICE,
and XYZ CORPORATION(S),

Defendants,
_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff hereby sues Defendants and alleges as follows:

**Preliminary Allegations**

1. Plaintiff, DAVID FINKELSTEIN, is a citizen of the United States and resides in the state of New York.

2. Defendant, CARNIVAL CORPORATION, is a Panamanian corporation which maintains its principal place of business in Miami, Florida.

3. Defendant, IBEROSERVICE INCOMING SERVICE, is believed to be an entity incorporated under the laws of Spain.

4. Defendant, XYZ CORPORATION(S), is included to represent the owner(s) and/or operator(s) of a shore excursion tour called "Soller & Train Ride," insofar as such entity has a different name than the named Defendants herein. According to Defendant Carnival, the "tour operator" of the subject excursion is IBEROSERVICE INCOMING SERVICE. Pursuant to Plaintiff's preliminary investigation, IBEROSERVICE INCOMING SERVICE is believed to have

owned and/or operated the shore excursion tour "Soller & Train Ride." XYZ CORPORATION(S) is (are) included in this matter in the event that discovery reveals any other entities are involved. XYZ CORPORATION(S) is (are) also used in a plural form. In the event that discovery reveals that additional entities, other than the named Defendants herein, contributed to the ownership, operation, and/or management of the shore excursion tour "Soller & Train Ride," the legal names of the entities will be substituted for XYZ CORPORATION(S).

5. The matter in controversy exceeds the sum or value of $75,000 specificed by 28 U.S.C. § 1332, exclusive of interest and costs. In the event diversity jurisdiction does not apply, then this matter is brought under the admiralty and maritime jurisdiction of this Court.

6. At all times material hereto, Defendants, CARNIVAL CORPORATION, IBEROSERVICE INCOMING SERVICE, and/or XYZ CORPORATION(S), personally and/or through an agent:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Were engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state;

   d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 and/or 48.193;

   e. The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

7. Defendants are subject to the jurisdiction of the Courts of this state.

8. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

9. At all times material hereto, Defendant, CARNIVAL CORPORATION (hereinafter "Carnival"), owned, operated, managed, maintained and/or controlled the vessel, M/V *Carnival Sunshine*.

10. At all times material hereto, Defendants, IBEROSERVICE INCOMING SERVICE and/or XYZ CORPORATION(S) (herein collectively referred to as "the Excursion Entities" in a manner so as to retain each Defendant's separate and individual liability in the event said Defendants are severed), owned and/or operated the shore excursion tour, "Soller & Train Ride" (hereinafter "subject excursion tour"), which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by Carnival.

11. The Excursion Entities are believed to have entered into a contract with Carnival for the protection of Carnival's passengers, whereby the Excursion Entities agreed to subject themselves to the laws and jurisdiction of the state of Florida, consented to personal jurisdiction over themselves, and consented to the venue of the United States District Court for the Southern District of Florida. The Excursion Entities are believed to have also agreed to indemnify Carnival for the claims made in this Complaint within the meaning of Florida Statute § 48.193(s). Furthermore, the Excursion Entities are subject to the jurisdiction of this Court because they sell shore excursion tickets through Carnival's website which is administered in Florida.

**<u>Facts Common to All Counts</u>**

12. On or about November 2, 2013, Plaintiff was a paying passenger aboard the M/V *Carnival Sunshine*, which was in navigable waters. The M/V *Carnival Sunshine* was docked at the port in Palma De Mallorca, Spain.

13. At all times material hereto, the subject excursion tour was advertised to passengers, including the Plaintiff, on Carnival's website and Carnival's promotional brochures or other material, which contain, but not limited to, Carnival's logo, trademark, and name.

14. At all times material hereto, Carnival offered passengers aboard the M/V *Carnival Sunshine* the opportunity to go on various shore excursions during the subject cruise vacation, including, but not limited to, the subject excursion tour "Soller & Train Ride."

15. At all times material hereto, Carnival had a shore excursion desk aboard the M/V *Carnival Sunshine* for the purpose of, *inter alia*, providing Carnival cruise ship passengers recommendations with regards to shore excursion tours and selling shore excursion tour tickets for profit to Carnival cruise ship passengers.

16. At all times material hereto, Carnival sold shore excursion tour tickets for the subject shore excursion "Soller & Train Ride" to cruise ship passengers travelling aboard Carnival cruise ships, such as the M/V *Carnival Sunshine*.

17. Plaintiff purchased from Carnival a shore excursion ticket for the subject shore excursion tour, "Soller & Train Ride" in Palma De Mallorca, Spain.

18. On or about November 2, 2013, Plaintiff, as part of his cruise ship vacation aboard the M/V *Carnival Sunshine*, participated in the subject excursion tour "Soller & Train Ride" in Palma De Mallorca, Spain. The subject excursion tour was arranged for, sponsored, recommended, operated, marketed, and/or sold by Carnival as part of the subject cruise vacation.

19. On or about November 2, 2013, Defendants arranged for and provided Carnival passenger subject shore excursion participants with motor coach transportation to and from the port terminal in Palma De Mallorca, Spain.

20. On or about November 2, 2013, as part of the subject excursion tour, Plaintiff and other passengers were instructed by Carnival crewmembers to disembark off the M/V *Carnival Sunshine* and proceed to the designated motor coach pick-up area immediately outside the port terminal building located at the port of Palma de Mallorca. As instructed by Carnival, Plaintiff proceeded to the motor coach pick-up area arranged for the subject excursion tour. As Plaintiff maneuvered through the congested crowd, Plaintiff tripped and fell over a low-lying object (believed to be a cigarette refuse container).

21. As a result of Defendants negligence, Plaintiff suffered severe physical injuries including, but not limited to, a right orbital fracture and right detached retina.

22. At all times material hereto, the Excursion Entities were the agent(s) and/or apparent agent(s) of CARNIVAL by virtue of the following, such that CARNIVAL is estopped from denying that CARNIVAL was the agent for the Excursion Entities:

   a. CARNIVAL made all arrangements for the subject shore excursion without disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

   b. CARNIVAL marketed the subject shore excursion using its company logo on its website and/or in its brochures and/or on its ship without disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

   c. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject shore excursion without disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

d. CARNIVAL recommended its passengers to not engage in excursions, tours and/or activities that are not sold through CARNIVAL; and/or

e. Until the point that Plaintiff actually participated in the subject shore excursion, the Plaintiff's exclusive contact concerning the subject shore excursion was with CARNIVAL and/or CARNIVAL's onboard excursion desk; and/or

f. The fee for the subject shore excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by CARNIVAL; and/or

g. Plaintiff received his receipts exclusively from CARNIVAL for the purchase of the subject shore excursion.

23. At all times material hereto, Plaintiff relied on the above, to their detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of CARNIVAL, in choosing the subject shore excursion. At no time did CARNIVAL represent to Plaintiff in particular, or the ship's passengers in general, in a meaningful way that the Excursion Entities were not agent(s) and/or employee(s) of CARNIVAL.

24. At all times material hereto, CARNIVAL was the owner or co-owner of the subject shore excursion. At all times material hereto, CARNIVAL was responsible for, and liable for, the actions of the Excursion Entities with respect to the subject shore excursion.

25. In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Entities by virtue of the following, whereby CARNIVAL and the Excursion Entities are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

a. CARNIVAL and the Excursion Entities entered into an agreement whereby: CARNIVAL made all arrangements for the Plaintiffs, on behalf of the partnership

with the Excursion Entities, for the subject shore excursion being run by the Excursion Entities; and/or

b. CARNIVAL marketed on CARNIVAL's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Entities, the subject shore excursion being run by the Excursion Entities; and/or

c. CARNIVAL maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with the Excursion Entities, about the subject shore excursion being run by the Excursion Entities; and/or

d. The Excursion Entities provided the equipment to be used in the subject shore excursion; and/or

e. CARNIVAL determined the amount of money charged for the subject shore excursion being run by the Excursion Entities; and/or

f. CARNIVAL collected the amount of money charged for the subject shore excursion being run by the Excursion Entities; and/or

g. CARNIVAL paid the Excursion Entities a portion of the sales of tickets for the subject shore excursion after the subject shore excursion tickets were sold; and/or

h. CARNIVAL shared profits and losses with the Excursion Entities for the subject shore excursion.

26. At all times material hereto, CARNIVAL was an agent for the Excursion Entities in the United States.

27. At all times material hereto, CARNIVAL was a partner in the subject shore excursion.

28. At all times material hereto, CARNIVAL operated and/or supervised the subject shore excursion.

29. At all times material hereto, the Excursion Entities owned and operated the subject shore excursion. The Excursion Entities were involved in providing the subject shore excursion to Plaintiffs. At all times material hereto, the Excursion Entities were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of CARNIVAL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

**COUNT I – NEGLIGENCE AGAINST DEFENDANT CARNIVAL CORPORATION**

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

30. It was the duty of Carnival to provide Plaintiff with reasonable care under the circumstances. This duty of care extends past the point of debarkation and embarkation from the M/V *Carnival Sunshine*, including the area of Plaintiff's incident.

31. On or about November 2, 2013, Carnival and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

32. On or about November 2, 2013, Plaintiff was injured due to the fault and/or negligence of Carnival and/or its agents, servants, joint venturers and/or employees for acts and/or omissions that include, but not limited to, the following:

a. Failure to provide Plaintiff with reasonable care under the circumstances;

b. Failure to provide passengers, including the Plaintiff, with a walking area free of tripping hazards;

c. Failure to maintain the area where Plaintiff's incident occurred in a reasonably safe condition;

d. Failure to control crowds and/or over-crowding of passengers and/or employees or agents in the area where Plaintiff's incident occurred;

e. Failure to identify the tripping hazard(s) which caused Plaintiff to trip and fall;

f. Failure to mark and/or highlight the tripping hazard(s) which caused Plaintiff to trip and fall;

g. Failure to provide a safe excursion tour;

h. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

i. Failure to adequately inspect and/or monitor the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject shore excursion tour was reasonably safe for cruise ship passengers and Plaintiff; and/or

j. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject excursion tour was reasonably safe for cruise ship passengers and Plaintiff; and/or

k. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

l. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

m. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

n. Failure to warn Plaintiff of the dangers existing in the area where Plaintiff's incident occurred; and/or

o. Failure to adequately warn Plaintiff of the dangers existing in the area where Plaintiff's incident occurred; and/or

p. Failure to ensure that the route taken to the location of the motor coaches was reasonably safe for cruise ship passengers and the Plaintiff; and/or

q. Failure to advise the Plaintiff and other cruise ship passengers that Carnival does not inspect and/or maintain the area where cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion; and/or

r. Failure to advise the Plaintiff and other cruise ship passengers that Carnival does not verify that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion is reasonably safe, inspected, and/or maintained; and/or

s. Failure to ensure that properly trained and supervised persons operated the subject shore excursion; and/or

t. Having a shore excursion that was not competently operated; and/or

u. Failure to require the Excursion Entities to provide proper emergency medical care; and/or

v. Failure to require the Excursion Entities to provide prompt and proper medical care; and/or

w. Failure to promulgate, enforce and/or comply with adequate policies and procedures to ensure that its cruise ship passengers, including the Plaintiff, are not exposed to and/or harmed by hazardous conditions existing in areas where Carnival invites its passengers to and/or areas that Carnival reasonably foresees its passengers visiting, such as the area where Plaintiff's incident occurred;

All of which caused the Plaintiff to suffer severe and permanent injuries when he tripped and fell over a low-lying cigarette trash container located at the port terminal in Palma De Mallorca, Spain.

33. At all times material hereto, Carnival had exclusive custody and control of the M/V *Carnival Sunshine*.

34. At all times material hereto, Carnival negligently failed to determine the hazards posed to Plaintiff, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn Plaintiff of the hazard. In addition, Carnival violated the International Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual. All of the above caused the Plaintiff to be injured.

35. Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

36. As a result of the negligence of Carnival, the Plaintiff was injured about his body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders,

aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

**COUNT II – NEGLIGENCE AGAINST THE EXCURSION ENTITIES**

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

37. At all times material hereto, the Excursion Entities owned and/or operated the subject shore excursion.

38. It was the duty of the Excursion Entities to provide Plaintiff with reasonable care under the circumstances.

39. On or about November 2, 2013, the Excursion Entities and/or their agents, servants joint venturers and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances.

40. On or about November 2, 2013, Plaintiff was injured due to the fault and/or negligence of the Excursion Entities and/or their agents, servants, joint venturers and/or employees for acts and/or omissions that include, but are not limited to, the following:

a. Failure to provide Plaintiff with reasonable care under the circumstances;
b. Failure to provide passengers, including the Plaintiff, with a walking area free of tripping hazards;

c. Failure to maintain the area where Plaintiff's incident occurred in a reasonably safe condition;

d. Failure to control crowds and/or over-crowding of passengers and/or employees or agents in the area where Plaintiff's incident occurred;

e. Failure to identify the tripping hazard(s) which caused Plaintiff to trip and fall;

f. Failure to mark and/or highlight the tripping hazard(s) which caused Plaintiff to trip and fall;

g. Failure to provide a safe excursion tour;

h. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

i. Failure to adequately inspect and/or monitor the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject shore excursion tour was reasonably safe for cruise ship passengers and Plaintiff; and/or

j. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject excursion tour was reasonably safe for cruise ship passengers and Plaintiff; and/or

k. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

l. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the area cruise ship passengers and the Plaintiff were invited to and/or

reasonably foreseen to visit for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

m. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

n. Failure to warn Plaintiff of the dangers existing in the area where Plaintiff's incident occurred; and/or

o. Failure to adequately warn Plaintiff of the dangers existing in the area where Plaintiff's incident occurred; and/or

p. Failure to ensure that the route taken to the location of the motor coaches was reasonably safe for cruise ship passengers and the Plaintiff; and/or

q. Failure to advise the Plaintiff and other cruise ship passengers that Carnival does not inspect and/or maintain the area where cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion; and/or

r. Failure to advise the Plaintiff and other cruise ship passengers that Carnival does not verify that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion is reasonably safe, inspected, and/or maintained; and/or

s. Failure to ensure that properly trained and supervised persons operated the subject shore excursion; and/or

t. Having a shore excursion that was not competently operated; and/or

u. Failure to require the Excursion Entities to provide proper emergency medical care; and/or

v. Failure to require the Excursion Entities to provide prompt and proper medical care; and/or

w. Failure to provide proper emergency medical care; and/or

x. Failure to provide prompt and proper medical care;

All of which caused the Plaintiff to suffer severe and permanent injuries when he tripped and fell over a low-lying cigarette trash container located at the port terminal in Palma De Mallorca, Spain.

41. At all times material hereto, the Excursion Entities had exclusive custody and control of the subject shore excursion.

42. The Excursion Entities knew of the foregoing conditions causing the subject accident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

43. As a result of the negligence of the Excursion Entities, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

## COUNT III – APPARENT AGENCY OR AGENCY BY ESTOPPEL CLAIM AGAINST CARNIVAL

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

44. At all times material hereto, the Excursion Entities were the apparent agent(s) of Carnival.

45. At all times material hereto, Carnival is estopped to deny that the Excursion Entities were their agent(s) or employee(s).

46. At all times material hereto, Carnival made manifestations which caused Plaintiff to believe that the Excursion Entities had authority to act for the benefit of Carnival. These manifestations included:

a. CARNIVAL allowed its name to be utilized in connection with the advertising of the Excursion Entities; and/or

b. CARNIVAL made all arrangements for the subject shore excursion without effectively disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

c. CARNIVAL marketed the subject shore excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

d. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject

shore excursion without effectively disclosing to Plaintiff that the subject shore excursion was being run by another entity (and/or entities); and/or

e. Until the point that Plaintiff actually participated in the subject shore excursion, the Plaintiff's exclusive contact concerning the subject shore excursion was with CARNIVAL; and/or

f. CARNIVAL recommended to Plaintiff to not engage in excursions, tours or activities that are not sold through CARNIVAL as CARNIVAL has no familiarity with other tours or their operations; and/or

g. Plaintiff received their receipts exclusively from CARNIVAL for the purchase of the subject shore excursion; and/or

h. The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by CARNIVAL.

47. Plaintiff reasonably relied on the above, to his detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of CARNIVAL in choosing the subject shore excursion.

48. It was reasonable to believe that the Excursion Entities were CARNIVAL's employee(s) and/or agent(s) because the Plaintiff booked, paid for and made all necessary arrangements for the subject shore excursion with CARNIVAL. CARNIVAL's actions caused Plaintiff to believe that the Excursion Entities had authority to act on CARNIVAL's behalf. At no time did the Excursion Entities represent to the Plaintiff in particular or the ship's passengers in a meaningful way that the Excursion Entities were not agents or employees of CARNIVAL.

49. Plaintiff's reasonable reliance was detrimental because they would not have booked, paid for and/or participated in the subject shore excursion or incur any injuries had the Plaintiff known the subject shore excursion was not operated by CARNIVAL.

50. The foregoing acts of negligence of CARNIVAL and/or the Excursion Entities were a direct and proximate cause of the Plaintiff's injuries and damages.

51. As a result of the negligence of the Defendant, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

**COUNT IV – JOINT VENTURE BETWEEN CARNIVAL AND THE EXCURSION ENTITIES**

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

52. At all times material hereto, CARNIVAL and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard CARNIVAL's ship(s).

53. At all times material hereto, CARNIVAL and the Excursion Entities entered into an agreement where CARNIVAL would sell the subject shore excursion to its passengers and the Excursion Entities would operate the subject shore excursion.

54. As its part of the joint venture, CARNIVAL arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject shore excursion and the money was then shared between CARNIVAL and the Excursion Entities. As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject shore excursion.

55. CARNIVAL, on behalf of the joint venture, charged a fee to passengers who utilized the excursions. The fee was split between CARNIVAL and the Excursion Entities.

56. At all times material hereto, CARNIVAL and the Excursion Entities had joint and/or shared control over aspects of the joint venture. The Excursion Entities had control over the day-to-day workings of the excursions. CARNIVAL also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject shore excursion. CARNIVAL had control over the arrangements, marketing and sales of the excursion.

57. At all times material hereto, CARNIVAL and the Excursion Entities shared a common purpose: to operate the subject shore excursion for a profit.

58. At all times material hereto, CARNIVAL and the Excursion Entities had a joint proprietary and/or ownership interest in the subject shore excursion. CARNIVAL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject shore excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject shore excursion.

59. At all times material hereto, CARNIVAL and the Excursion Entities shared any losses sustained from the joint venture.

60. CARNIVAL and the Excursion Entities are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

61. At all times material hereto, CARNIVAL and the Excursion Entities therefore:

a. Had an intention to create a joint venture;

b. Had a joint proprietary interest in the subject matter of the venture;

c. Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

d. Had a right to share in the profits of the joint venture; and

e. Would share losses which may have been sustained.

62. As joint venturers, CARNIVAL and the Excursion Entities are liable for each other's negligence. As a result, CARNIVAL is liable for the negligent conduct of the Excursion Entities.

63. As a result of the negligence of Defendants, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

**COUNT V – THIRD PARTY BENEFICIARY**

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

64. CARNIVAL and the Excursion Entities entered into a contract to provide excursions for passengers on board CARNIVAL's ship(s).

65. The contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefits the third-party Plaintiff by requiring the Excursion Entities to exercise reasonable care in the operation of the subject shore excursion.

66. The contract between the parties clearly manifested the intent of the contracting parties that the contract primarily and directly benefit the third-party Plaintiff by requiring the Excursion Entities to maintain insurance and/or exercise reasonable care in the operation of the subject shore excursion.

67. This contract was breached by CARNIVAL and the Excursion Entities for acts and/or omissions that include, but are not limited to, the following:

a. Failure to provide Plaintiff with reasonable care under the circumstances;

b. Failure to provide passengers, including the Plaintiff, with a walking area free of tripping hazards;

c. Failure to maintain the area where Plaintiff's incident occurred in a reasonably safe condition;

d. Failure to control crowds and/or over-crowding of passengers and/or employees or agents in the area where Plaintiff's incident occurred;

e. Failure to identify the tripping hazard(s) which caused Plaintiff to trip and fall;

f. Failure to mark and/or highlight the tripping hazard(s) which caused Plaintiff to trip and fall;

g. Failure to provide a safe excursion tour;

h. Failure to properly supervise and oversee the excursion marketed, advertised, offered and sold to its guests; and/or

i. Failure to adequately inspect and/or monitor the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject shore excursion tour was reasonably safe for cruise ship passengers and Plaintiff; and/or

j. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject excursion tour was reasonably safe for cruise ship passengers and Plaintiff; and/or

k. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the area Plaintiff was invited to and/or reasonably foreseen to visit for the subject shore excursion was reasonably safe for cruise ship passengers; and/or

l. Failure to promulgate and/or enforce adequate policies and procedures to ensure that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

m. Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion was regularly and adequately inspected and/or maintained; and/or

n. Failure to warn Plaintiff of the dangers existing in the area where Plaintiff's incident occurred; and/or

o. Failure to adequately warn Plaintiff of the dangers existing in the area where Plaintiff's incident occurred; and/or

p. Failure to ensure that the route taken to the location of the motor coaches was reasonably safe for cruise ship passengers and the Plaintiff; and/or

q. Failure to advise the Plaintiff and other cruise ship passengers that Carnival does not inspect and/or maintain the area where cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion; and/or

r. Failure to advise the Plaintiff and other cruise ship passengers that Carnival does not verify that the area cruise ship passengers and the Plaintiff were invited to and/or reasonably foreseen to visit for the subject shore excursion is reasonably safe, inspected, and/or maintained; and/or

s. Failure to ensure that properly trained and supervised persons operated the subject shore excursion; and/or

t. Having a shore excursion that was not competently operated; and/or

u. Failure to require the Excursion Entities to provide proper emergency medical care; and/or

v. Failure to require the Excursion Entities to provide prompt and proper medical care; and/or

w. Failure to provide proper emergency medical care; and/or

x. Failure to provide prompt and proper medical care;

All of which caused the Plaintiff to suffer severe and permanent injuries when he tripped and fell over a low-lying cigarette trash container located at the port terminal in Palma De Mallorca, Spain.

68. As a result of the negligence of the Defendants, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law and demand trial by jury.

**Date: October 27, 2014.**

***Respectfully submitted,***

LIPCON, MARGULIES, ALSINA
& WINKLEMAN, P.A.
Attorneys for Plaintiff
One Biscayne Tower, Suite 1776
Miami, Florida 33131
Telephone: (305) 373 – 3016
Facsimile: (305) 373 – 6204
E-mail: dvillarreal@lipcon.com

By: s/*David A. Villarreal*
**Michael A. Winkleman**
Florida Bar No. 36719
**David A. Villarreal**
Florida Bar No. 100069